UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In the Matter of

CAROL RAMOS-MEZA

                              Debtor,

-------------------------------------------------------x

CAROL RAMOS-MEZA, Debtor and
Plaintiff on behalf of herself and all others
similarly situated,

                              Appellant,

  -v-

CHASE BANK USA, NATIONAL
ASSOCIATION,

                              Appellee.

-------------------------------------------------------x

Chapter 7
Case No. 23-11898 (LGB)

Case No. 24 Civ. 6593 (LTS)
Adv. Pro. No. 24-01332 (LGB)

<u>MEMORANDUM ORDER</u>

        Pending before the Court are the appeal of Carol Ramos-Meza ("Appellant" or "Ramos-Meza") of the "Order Granting Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss," issued by the Bankruptcy Court for the Southern District of New York on August 8, 2024 (docket entry no. 1 (the "Appeal")), and the motion of Chase Bank USA[1] ("Appellee" or

---

[1] Chase notes that JPMorgan Chase Bank, N.A. is the proper defendant, as "Chase Bank USA, N.A. was merged with and into JPMorgan Chase Bank, N.A. in 2019, with JPMorgan Chase Bank, N.A. as the surviving bank." (Docket entry no. 3, at 1 n.1.)

"Chase") seeking dismissal of the Appeal (docket entry no. 3). The Court has jurisdiction of this appeal pursuant to 28 U.S.C. section 158(a).

The Court has reviewed carefully the parties' submissions and, for the following reasons, dismisses the instant Appeal.[2]

BACKGROUND

Because Ramos-Meza appeals from the grant of a motion to dismiss an adversary proceeding, the following summary of relevant facts is drawn from Ramos-Meza's complaint in the underlying adversary proceeding (A-6-15[3] ("Complaint" or "Compl.")) and documents relied upon or integral thereto.

On April 1, 2019, Ramos-Meza entered into a "Retail Installment Contract" with Yonkers Honda for the purchase of a used 2016 Honda CR-V, which contract was subsequently assigned to Chase. (A-22-23 (the "Auto Loan").) On November 30, 2023, Ramos-Meza filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. (Compl. ¶ 17.) Ramos attempted to make a payment on the Auto Loan thereafter in December 2023 via Chase's online bill-pay service, but was denied online access. (Id. ¶ 18.) Ramos-Meza then telephoned the Chase Customer Service number in an attempt to restore her access to online bill-pay, but was told by a Chase representative that her online bill-pay access had been cancelled because she had filed a Chapter 7 bankruptcy petition. (Id. ¶ 19.) She was further

---

[2] Having reviewed the briefs and the record, the Court finds that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument. FED. R. BANKR. P. 8019(b).

[3] Citations are to the appendix filed at docket entry no. 15-1.

informed by the representative that her online bill-pay access would not be restored unless she entered into a reaffirmation agreement with Chase.  (Id.)

On or about December 8, 2023, Chase mailed Ramos-Meza a letter to her home address, which was entitled "Update: Here's how your bankruptcy filing will affect your auto account."  (Id. ¶ 20; A-87.)  The form letter informed Ramos-Meza of the following actions taken by Chase in response to her Chapter 7 petition:

- We stopped automatic payments when we found out about your bankruptcy filing.
- We removed your online account access. If you filed Chapter 7, we will restore your online access if you request a reaffirmation agreement and if that agreement is approved by the court.
- We stopped sending you monthly statements. If you want us to resume sending them, please sign, date and return the enclosed letter. In addition, if you have an attorney have your attorney send us a written request [to the below-listed address].

(A-87.)  The letter further informed Ramos-Meza that, "[if] [she] filed Chapter 7 and ha[d] not reaffirmed the debt, making payments [was] voluntary[,]" but if she so chose, she could make payments in one of four ways: by phone, in person at any Chase branch, by certain bill-pay services, including MoneyGram and Western Union, or by mail to the address provided.  (Id.)  The letter closed with a notice that read:

> **IMPORTANT BANKRUPTCY INFORMATION**: This letter is for informational purposes only and is not an attempt to collect a debt for which personal liability has been discharged in a Bankruptcy case or from a debtor that is in an open Bankruptcy case subject to the automatic stay. If you are represented by an attorney, a copy of this letter was also mailed to your attorney.

(A-88.)  Consistent with that notice, Chase mailed a courtesy copy of the letter sent to Ramos-Meza to her attorney on or about the same date, December 8, 2023.  (A-92-95.)  From December 2023 through at least the filing of her Complaint, Ramos-Meza made monthly payments on the Auto Loan by calling Chase directly.  She alleges that each interaction "was

difficult and time-consuming" and that each call "included long periods of her being on hold while she was transferred to several different representatives every time she called to make her payment." (Compl. ¶ 21.)

On March 11, 2024, Ramos-Meza filed a putative class action lawsuit against Chase, asserting that Chase's conduct amounted to coercion of debtors to enter into reaffirmation agreements of Chase car loans, which violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. sections 362(a)(3) and (6) ("Section 362(a)(3)" and "Section 362(a)(6)") and the reaffirmation sections of the Code, 11 U.S.C. sections 524(c), (d), and (k). (A-4, Compl. ¶¶ 30-31.) On May 10, 2024, Chase filed a motion to dismiss the Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, alternatively, to strike or limit the class allegations, arguing, in relevant part, that: (1) Ramos-Meza lacked standing to bring her claims, because she had not pleaded a cognizable concrete injury stemming from Chase's conduct; (2) Chase did not violate either cited provision of the automatic stay because the online bill-pay platform was its property, not Ramos Meza's, and neither the suspension of online bill-pay nor the form letters constituted actions to collect, assess, or recover a debt, namely, the Auto Loan; (3) there is no private right of action under Section 524, and, in any case, Ramos-Meza never entered into a reaffirmation agreement; and (4) class allegations should be stricken or otherwise limited to comprise Chapter 7 debtors who filed for bankruptcy in this District. (A-4, A-97-98.)

The Bankruptcy Court held a hearing on Chase's motion on August 6, 2024, and issued an oral ruling, granting Chase's motion to dismiss the Complaint in its entirety. (A-4; A-205-68.) The Bankruptcy Court found that, "[t]o establish standing in the Second Circuit after the Supreme Court's decision in TransUnion and the Second Circuit's decision in Maddox, cited

to in all the pleadings from all parties, the allegations of time spent and convenience must be inextricably linked to an independent concrete harm[,]" and that Ramos-Meza had not sufficiently pleaded such a concrete harm.  (A-261.)  The Bankruptcy Court also found that, were Ramos-Meza to have properly established standing, the court would dismiss the adversary proceeding on the merits, because Ramos-Meza: (1) had not entered into a reaffirmation with Chase, and therefore "there is no basis in the complaint for any breach [by] Chase of Sections 524(c), (d), or (k) of the Bankruptcy Code" (A-265); (2) failed to state a claim under Section 362(a)(3), because "Chase's online bill paying system is not property of the estate or, for that matter, property from the estate[,]" belonging instead to Chase, and the form letters were not "evidence of [Chase's] intent to obtain property of the estate, in this case, what would be the car, or to exercise control over property of the estate" (A-262-64); and (3) failed to state a claim under Section 362(a)(6), because, inter alia, (i) the form letter specifically indicated that making payments was voluntary if the relevant debt had not been reaffirmed and included a notice that the letter was for "informational purposes and is not an attempt to collect a debt, for which personal liability has been discharged in a bankruptcy case or from a debtor that is in an open bankruptcy case, subject to the automatic stay[,]" (ii) suspension of the online bill-pay system did not preclude access to Ramos-Meza's personal property, (iii) although the Bankruptcy Court did not view the letter as soliciting a reaffirmation agreement, "mere solicitation of a reaffirmation agreement does not violate the automatic stay[,]" and (iv) although not the standard, Ramos-Meza's "own actions after receiving the letter [did] not indicate that she was coerced by [Chase]" (A-264-67).  Having found no viable basis for Ramos-Meza's individual claims, the Bankruptcy Court did not reach the class issues.  (A-267.)

The Bankruptcy Court entered a written order memorializing its disposition of the motion on August 8, 2024. (A-4; A-269-70 ("August Order").) Plaintiff filed her notice of appeal of the August Order on August 16, 2024. (A-4.) On September 6, 2024, Chase moved for an order to show cause as to why the instant Appeal should not be dismissed due to Ramos-Meza's failure to timely file a designation of the items to be included in the record of this appeal and a statement of the issues to be presented on appeal ("Designation and Statement"), as required by Federal Rule of Bankruptcy Procedure 8009(a)(1). (Docket entry no. 3.) Ramos-Meza, in response, filed her Designation and Statement the same day. (Docket entry no. 5.) On March 12, 2025, Magistrate Judge Ona T. Wang entered an order denying as moot only the portion of the motion that sought to proceed by order to show cause. (Docket entry no. 23.) The parties do not dispute that Chase's motion to dismiss the appeal remains pending. (Docket entry no. 15 ("App't Mem.") at 7; docket entry no. 17, at 11 n.7.)

## Discussion

Standing

"Because standing is jurisdictional under Article III, it is a threshold issue that must be addressed before merits questions such as timeliness and plausibility." Moreira v. Société Générale, S.A., 125 F.4th 371, 384 (2d Cir. 2025) (citation and internal quotation marks omitted). A district court reviews a bankruptcy court's findings of fact for clear error, and its legal determinations de novo. Tingling v. Educ. Credit Mgmt. Corp. (In re Tingling), 990 F.3d 304, 307 (2d Cir. 2021). A "decision as to a plaintiff's standing to sue based on the allegations of the complaint and the undisputed facts evidenced in the record" is reviewed de novo. Rajamin v. Deutsche Bank Nat'l Tr. Co., 757 F.3d 79, 84-85 (2d Cir. 2014).

"Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). "To demonstrate injury in fact, a plaintiff must show the invasion of a [(1)] legally protected interest that is [(2)] concrete and [(3)] particularized and [(4)] actual or imminent, not conjectural or hypothetical." Id. (citation omitted). In TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), the Supreme Court reviewed "the characteristics that make a harm 'concrete' for the purposes of Article III[,]" explaining that "whether a harm qualifies as concrete hinges on whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." Maddox, 19 F.4th at 63 (internal quotations marks and citations omitted). Although noting that "Congress's views may be 'instructive' in determining whether a harm is sufficiently concrete," the Court nevertheless clarified that "an injury in law is not an injury in fact." Id. (citations omitted). Accordingly, post-TransUnion, neither risk of future harm, nor a statutory violation in and of itself, amounts to a "concrete" injury for standing purposes. Id. at 64.

In the wake of TransUnion, courts in this Circuit have, as Appellee notes, overwhelmingly found that standing cannot be premised on "mere allegations of wasted time, resources, and efforts" resulting from some challenged conduct, Spitz v. Caine & Weiner Co., 23-CV-7853-PKC, 2024 WL 69089, at *3 (E.D.N.Y. Jan. 5, 2024), unless the "wasted time is inextricably bound up in a cognizable injury," e.g., time and resources expended to mitigate a real and imminent risk of harm also resulting from the challenged conduct, Cavazzini v. MRS Assocs., 574 F. Supp. 3d 134, 143-44 (E.D.N.Y. 2021) (gathering case law). See also

Baptiste-Elmine v. Richland & Falkowski, PLLC, No. 21-CV-4994-RPK-PK, 2025 WL 974346, at *6 (E.D.N.Y. Apr. 1, 2025) (same). While Appellant seeks to distinguish much of this case law based on the assertion that these cases are "examples of plaintiffs alleging lost time and effort merely <u>investigating</u> the merits of their claims," rather than "expense or inconvenience directly <u>resulting</u> from the unlawful conduct" (App't Mem. at 13-15 (emphasis added); docket entry no. 22, at 13), this characterization is inaccurate. See Cavazzini, 574 F. Supp. 3d at 138, 143 (alleging harm of wasted time spent "as a result" of defendants' alleged conduct, i.e., seeking to collect on a debt plaintiff alleged he did not owe); Grinblat v. Frontline Asset Strategies, LLC, No. 22-CV-4467 (NSR), 2023 WL 5002474, at *3 (S.D.N.Y. Aug. 4, 2023) ("[T]he only cognizable harm Plaintiff asserts is for a loss of time, which he claims has been squandered <u>as a direct consequence of Defendant's actions</u> [in seeking to collect an outstanding debt balance]." (emphasis added)).

Relying on <u>TransUnion</u> and its progeny, the Bankruptcy Court therefore correctly found that Plaintiff's pleaded injuries of difficulty and wasted time stemming from Chase's suspension of online bill-pay, standing alone, did not amount to "concrete" injuries for Article III standing purposes. (A-260-61 (noting that "the allegations of time spent and convenience <u>must</u> be inextricably linked to an independent concrete harm")); cf., e.g., In re GEICO Customer Data Breach Litig., 691 F. Supp. 3d 624, 633-34 (E.D.N.Y. 2023) (finding allegations of "time, effort, and resources" spent to address data breach sufficient to establish injury in fact, reasoning that, "[b]ecause these alleged losses implicate <u>monetary</u> <u>harm</u> [tied to identify theft] directly caused by the data breach, they are sufficiently concrete to constitute an injury-in-fact" (emphasis added) (quoting In re USAA Data Sec. Litig., 621 F. Supp. 3d 454, 466 (S.D.N.Y. 2022))). Appellant here was not obligated to pay by phone once she lost access to online bill-pay; rather,

she had the opportunity to receive loan statements by mail and she chose, out of the four alternate payment options made available by Chase, to pay by phone.  (A-261; A-93 (providing form letter to opt-in to receiving monthly statements, and explaining that voluntary payments could be made by phone, in person, via a number of bill-pay services such as MoneyGram, or by mail to the address provided)); see also Cavazzini, 574 F. Supp. 3d at 144 ("A plaintiff who has failed to assert a concrete injury supporting any of his other claims cannot clear the standing threshold by claiming wasted time; to allow otherwise would enable litigants to 'manufacture standing merely by inflicting harm on themselves.'" (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416 (2013))).

Timeliness

While Appellant's failure to demonstrate standing is dispositive, her appeal would nevertheless fail due to the untimely filing of her Designation and Statement.  The Court, in what may be an excess of caution, explains why Ramos-Meza's appeal must be dismissed due to this untimely filing.

Within days after Chase filed its motion to dismiss the instant appeal due to Plaintiff's failure to timely file a Designation and Statement (docket entry no. 3), Ramos-Meza moved for an order allowing the late filing of her Designation and Statement, and filed such Designation and Statement.  (Docket entry no. 6.)  Rule 8009(a)(1) requires that an appellant file with the bankruptcy clerk a Designation and Statement no later than 14 days after filing a notice of appeal.  Federal Rule of Bankruptcy Procedure 9006(b)(1) allows for an extension of time on motion after a specified period expires if the failure to act within that period resulted from "excusable neglect."  To determine whether a party has established "excusable neglect" under Rule 9006, courts look to the so-called Pioneer factors: (1) "the danger of prejudice to the

debtor," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith."  Lynch v. United States (In re Lynch), 430 F.3d 600, 603 (2d Cir. 2005) (per curiam) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

The Second Circuit has "taken a hard line" in applying the Pioneer test.  Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 122 (2d Cir. 2005) (quoting Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003)).  Recognizing that the first, second, and fourth factors "usually weigh in favor of the party seeking the extension[,]" the Second Circuit has focused on the third factor, the reason for the delay, cautioning "that the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule[.]"  Id. at 123-24 (citations omitted).  Rather, where the relevant rule is entirely clear, it is expected "that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test."  Id. at 124 (citation omitted); see also, e.g., Silivanch, 333 F.3d at 366 n.7 ("[T]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[] case, the reason-for-delay factor will always be critical to the inquiry." (quoting Graphic Commc'ns Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5-6 (1st Cir. 2001)) (alterations in original)).

Accordingly, where an appellant fails to timely file a Designation and Statement pursuant to the "clear" strictures of Rule 8009(a)(1) and offers insufficient justification, courts in this Circuit have routinely dismissed appeals.  See, e.g., In re Lynch, 430 F.3d at 604 (finding filing requirement of Rule 8006, the predecessor to Rule 8009, to be "quite clear" and affirming

district court dismissal of appeal where attorney was aware of the deadline, as demonstrated by repeated extension requests, but failed to meet it); Blakely v. Messer (In re 477 W. 142nd St. Hous. Dev. Fund Corp.), 346 F. Supp. 3d 413, 415 (S.D.N.Y. 2018) (dismissing appeal where appellant failed to timely file Designation and Statement without justification after being granted extension of time to do so); Nestor v. Togut (In re Nestor), No. 24-CV-9250-JHR-SLC, 2025 WL 1626560, at *3-4 (S.D.N.Y. Apr. 10, 2025) (recommending dismissal of appeal in part where appellant filed Designation and Statement six days late with no proffered justification for delay), report & recommendation adopted, 2025 WL 2081512 (S.D.N.Y. July 24, 2025).

In this case, there is no dispute that Appellant filed her Designation and Statement seven days after the deadline set forth in Rule 8009(a). (Docket entry no. 6-1 ("App't MTD Mem.") at 4.) As reason for the delay, Appellant's counsel explains that they had anticipated this Court issuing a "Notice to the Parties Concerning Appeal" that would set forth, inter alia, the deadline for filing the Designation and Statement, which counsel asserts is a standard practice in a sister district court in this Circuit. (Id.; docket entry no. 6-2 ¶ 4.) As Chase notes, however, "all such a notice would do is, at most, relay the same deadlines set forth in the federal rules[,]" (docket entry no. 7, at 3)—deadlines with which counsel, particularly sophisticated counsel with experience litigating in bankruptcy court, should be familiar. Although the first, second, and fourth Pioneer factors arguably weigh in favor of Appellant given the relatively short filing delay, the failure by experienced counsel to follow the clear requirements of Rule 8009(a)(1) due to inadvertence does not amount to "excusable neglect" in view of the great weight placed on the third Pioneer factor in this Circuit. Silivanch, 333 F.3d at 366 n.7; see also Asbestos Pers. Inj. Plaintiffs v. Travelers Indem. Co. (In re Johns-Manville Corp.), 476 F.3d 118, 124 (2d Cir. 2007) ("'Notwithstanding the 'flexible' Pioneer . . . standard, experienced counsel's misapplication of

clear and unambiguous procedural rules cannot excuse his failure to [timely file].'" (citation omitted)).

Appellant relies on the standard under Federal Rule of Bankruptcy Procedure Rule 8003(a)(2) to argue that dismissal is not warranted, but that standard is inapplicable here. (App't MTD Mem. at 2-4.)  Rule 8003(a)(2) provides, in relevant part, that, "[a]n appellant's failure to take any step other than timely filing a notice of appeal does not affect the appeal's validity, but is ground only for the district court . . . to act as it considers appropriate, including dismissing the appeal." FED. R. BANKR. P. 8003(a)(2); see Harris v. Albany Cnty. Off. (In re Harris), 464 F.3d 263, 270-72 (2d Cir. 2006) (setting forth factors that a court must consider in determining whether to dismiss a case under Rule 8001, the predecessor to Rule 8003(a)(2)). The Rule 8003 standard is, however, inapposite in the instant case, in which the question turns on the application of Rule 9006.  As explained by the Second Circuit panel in the Harris decision itself: because Harris, unlike the Appellant here, "did file a timely record and designation[,]" and "it was the contents of the filings that were at issue rather than the timeliness of the filings," the Harris court held that "Rule 9006, which concerns when a court should excuse a missed deadline," was not applicable to evaluate the district court's dismissal of the subject bankruptcy appeal.  Harris, 464 F.3d at 270 n.5.

Conversely, in In re Lynch, the Second Circuit found that the district court had correctly applied the Rule 9006(b)(1) standard in dismissing a bankruptcy appeal where the plaintiff-appellant had failed to timely file a Designation and Statement, explicitly rejecting the appellant's argument that the standard under Rule 8003(a)(2)'s predecessor governed.  430 F.3d at 604-605 (finding argument regarding applicable standard to be procedurally improper but noting that, if the court were to reach that issue, it would find that Rule 9006(b)(1) was properly

applied because "where the appeal is precluded without the untimely action, there is no scope for an independent analysis under Rule 8001(a)"). In view of these clearly enunciated principles, Rule 9006(b)(1) and the Pioneer factors govern Appellant's motion for leave to belatedly file a Designation and Statement, and Chase's motion to dismiss premised on Appellant's failure to timely file, as outlined above. Because, as explained above, Appellant has failed to demonstrate excusable neglect sufficient to warrant an extension under Rule 9006(b)(1), "her appeal cannot proceed."[4] See id. at 603 ("[I]f [Appellant] does not meet the conditions of Rule 9006(b)(1), and thus is not allowed to file her Designation and Statement, her appeal cannot proceed. The decisive question, then, is whether or not [Appellant's] failure to file on time was the result of excusable neglect.").

In light of Appellant's lack of standing to pursue her automatic stay and reaffirmation-related claims and her failure to demonstrate excusable neglect in connection with her untimely filing, the Court need not address the Bankruptcy Court's merits determination.

CONCLUSION

For the foregoing reasons, Ramos-Meza's appeal of the Bankruptcy Court's order granting Chase's motion to dismiss Adv. Pro. No. 24-01332 (LGB) is dismissed for lack of standing to litigate the underlying claims, and the Court further finds that dismissal is necessary

---

[4] In connection with motion practice on the order to show cause as to the dismissal of the appeal, Appellant requested oral argument "to respond to arguments and case law that Chase [made] for the first time" in its reply briefing, citing several cases that did not appear in Chase's opening brief. (Docket entry no. 8.) Because (1) the crux of Chase's argument is the same over the course of its briefing, i.e., that Appellant must establish excusable neglect to justify the untimely filing of the Designation and Statement, and (2) the Court is able to parse the additional case law proffered by Chase, the Court finds the parties' papers sufficient to resolve this issue and accordingly denies Appellant's request for oral argument.

because Appellant did not file her designation in a timely fashion. The Clerk of Court is respectfully directed to enter judgment dismissing the appeal, terminate all pending motions, and close this case.

    SO ORDERED.

Dated: New York, New York
       September 29, 2025

                         /s/ Laura Taylor Swain
                        LAURA TAYLOR SWAIN
                        Chief United States District Judge